UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NICHOLAS R. De BIASE,

                    Plaintiff,

          v.

AMAZON.COM, INC.,

                    Defendant.

**MEMORANDUM AND ORDER**

23-cv-08128 (LDH) (SIL)

LaSHANN DeARCY HALL, United States District Judge:

Nicholas De Biase ("Plaintiff") brings the instant action against Amazon.com ("Defendant") asserting claims of negligence, strict product liability, breach of contract, promissory estoppel, and deceptive business practices stemming from the sale of a Defendant selling a counterfeit flea/tick treatment. Defendant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint in its entirety.

## BACKGROUND[1]

On September 24, 2020, Plaintiff purchased FRONTLINE flea and tick medicine from Defendant. (Compl. ¶ 5, ECF No. 1.) On or about September 28, 2020, Plaintiff received the medication and gave his dog its first dose. (*Id.*) A second dose was administered by Plaintiff on October 28, 2020. (*Id.*) That same day, Defendant sent an email to Plaintiff directing Plaintiff to discontinue the use of the medication and to dispose of it because Defendant learned the product was counterfeit (hereinafter referred to as the "Counterfeit Medication"). (*Id.* ¶ 6.) Defendant

---

[1] The following facts are taken from the Complaint and are assumed to be true for the purpose of deciding the instant motion.

1

also informed Plaintiff that it would refund Plaintiff for the Counterfeit Medication, and that Plaintiff could purchase an authentic replacement of the FRONTLINE medication (the "Authentic Medication") from Amazon.com. (*Id.*) On October 30, 2020, Plaintiff ordered the Authentic Medication from Amazon.com and received it on November 2, 2020.[2] (*Id.* ¶ 7.)

On or about November 16, 2020, Plaintiff had a conversation with Amazon Support regarding Counterfeit Medication. (*Id.* ¶ 8.) Plaintiff informed Amazon Support that his dog infected him with a ringworm because of the dog's "lack of protection." (*Id.*) In November, Plaintiff started to notice lesions on his body, including one in a ring shape. (*Id.* ¶ 10.) Plaintiff then discovered small circular areas of hair loss on his dog. (*Id.*) By following instructions from the dog's veterinarian and administering the Authentic Medication, (*id.*), the dog's ringworm was resolved in November 2020, (*id.* ¶ 12). However, Plaintiff's ringworm infection persisted. (*Id.*) Plaintiff saw a physician via a telehealth appointment where the doctor confirmed his ringworm diagnosis and prescribed him medication. (*Id.* ¶ 13.)

On November 24, 2020, Norris Holt, a representative of Defendant who worked for a third-party company Sedgwick, contacted Plaintiff regarding Plaintiff's claim and damages from the Counterfeit Medication. (*Id.* ¶ 21.) According to the Complaint, Defendant's representative informed Plaintiff that Defendant would cover Plaintiff's medical expenses and damages caused by the Counterfeit Medication. (*Id.*) Plaintiff provided Defendant a summary of his damages. (*Id.* ¶ 22.) However, Defendant denied Plaintiff's "claim." (*Id.*)

On December 7, 2020, Plaintiff developed new medical impairments beyond the ringworm. (*Id.* ¶ 14.) Plaintiff's primary care physician directed Plaintiff to seek medical attention at a hospital emergency room. (*Id.*) According to the Complaint, Plaintiff was

---

[2] Plaintiff's Complaint lists this date as "November 2, 2023," which the Court has corrected for the purposes of this memorandum and order as it appears to be a typographical error.

diagnosed with Bell's Palsy.  (*Id.* ¶ 15.)  Following this hospital visit, on December 18, 2020, Plaintiff was transported back to the hospital due to another newly developed medical condition, which required surgery.  (*Id.* ¶ 16.)  Following his procedure, Plaintiff returned to his home in Fire Island, New York.  (*Id.* ¶ 17.)  Plaintiff subsequently traveled from Fire Island to New York City to attend several doctor appointments with his primary care physician.  (*Id.* ¶¶ 17, 19.)  In attending these medical appointments, Plaintiff incurred expenses from staying at hotels and using car services.  (*Id.* ¶ 19.)

On October 27, 2023, Plaintiff filed the instant complaint, which included a proposed summons.  (Proposed Summons, ECF No. 1-2.)  However, the Clerk of Court failed to issue the summons to Plaintiff.  (Order, Aug. 26, 2024.)  On August 26, 2024, the magistrate judge issued an order directing the Clerk of Court to "promptly issue a summons to Defendant Amazon.Com, Inc." (Order, Aug. 26, 2024.)  In addition, the magistrate judge directed that "[b]y November 20, 2024, if Plaintiff does not serve the summons and complaint upon Defendant or show good cause why such service has not been effected, the [magistrate judge] will recommend that the Complaint be dismissed without prejudice." (*Id.*)  On November 19, 2024, Plaintiff served the summons upon Defendant.  (Executed Summons, ECF No. 9.)

### STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court deciding whether to grant a motion to dismiss must "draw all reasonable inferences in [the plaintiff's] favor, assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v.*

*Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal citation omitted).  "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

Moreover, where, as here, plaintiffs are proceeding pro se, their pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, 127 (2007) (per curiam)).  This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

## DISCUSSION

### I.   Plaintiff's tort and deceptive business practices claims are not barred by the statute of limitations.

"In diversity cases, state statutes of limitations and tolling rules govern the timeliness of state law claims." *Page v. Ellenoff Grossman & Schole LLP*, 2024 WL 4195137, at *1 (2d Cir. Sept. 16, 2024) (first citing *Schermerhorn v. Metro. Transp. Auth.*, 156 F.3d 351, 354 (2d Cir. 1998) (per curiam); and then citing *Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir. 1989)).  Of particular relevance here, under New York law, "an action to recover damages for a personal

4

injury" and "an action to recover upon a liability, penalty or forfeiture created or imposed by statute" is subject to a three-year statute of limitation.  C.P.L.R. § 214(2), (3).  That said, the statute of limitations period is generally tolled during 90-day service period proscribed in Rule 4(m) of the Federal Rules of Civil Procedure.  *Zapata v. City of New York*, 502 F.3d 192, 194 n.4 (2d Cir. 2007).  If, however, an action is dismissed for failure to serve within that 90-day period, "the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to its termination."  *Id.*

Here, Plaintiff timely filed this action on October 27, 2023.  (Compl.)  Nevertheless, Defendant argues that the Complaint must be dismissed because Plaintiff failed to serve Defendant with the summons and complaint within the 90-day period prescribed by Rule 4(m). (Def.'s Mem. L. Supp. Mot. Dismiss ("Def.'s Mem.") at 5, ECF No. 14-1.)  Not necessarily. Under Rule 4(m), the Court enjoys discretion to extend the service period by "order that service be made within a specified time."  Fed. R. Civ. P. 4(m); *see also Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 59 (E.D.N.Y. 2006) ("[U]nder Rule 4(m), this Court, in the exercise of its discretion, hereby extends the time for effecting service upon defendants . . . . "); *Hertzner v. U.S. Postal Serv.*, 2007 WL 869585, at *7 (E.D.N.Y. Mar. 20, 2007) (considering "whether a discretionary extension is warranted" under Rule 4(m)).  In determining whether to exercise this discretion, courts consider:  "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision."  *Carroll v. Certified Moving & Storage, Co., LLC*, 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005) (quoting *Eastern Refractories Co. v. Forty Eight Insulations*, Inc., 187

F.R.D. 503, 506 (S.D.N.Y. 1999)).  On balance, these considerations weigh in favor of allowing extension of the service period.

*First*, the statute of limitations would bar Plaintiff's action.  Plaintiff's claims ran on November 16, 2023.  As such, absent an extension, Plaintiff would have been barred from refiling this action without the Court exercising its discretion.  This factor weighs heavily in favor of the Court exercising its discretion for late service.  Indeed, it is the "Second Circuit's preference to resolve disputes on the merits." *Gumbs v. Off. of Mental Health*, 2012 WL 847353, at *3 (E.D.N.Y. Mar. 13, 2012) ("'[L]itigation disputes should be resolved on the merits, not by default' because 'dismissal is a harsh remedy.'" (alteration in original) (quoting *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995))).

*Second*, Defendant did not have actual notice of the claims asserted in the complaint.  There is nothing in the complaint, nor the record, which would suggest Defendant had actual notice of the claims.  Accordingly, this factor favors Defendant.

*Third*, Defendant did not attempt to conceal the defect.  While Defendant may have been aware of the underlying claims made to Amazon.com, nothing in the Complaint or subsequent filings leads this Court to conclude that Defendant knew the actual complaint was filed and, therefore, Defendant could not conceal this defect.  As such, this factor weighs against granting an extension.

*Fourth*, Defendant would not be prejudiced by the granting of Plaintiff's relief from the provision.  Defendant argues that it is prejudiced because it thought "the claim was over," and the late service "implicates a central interest that limitations periods are intended to protect: requiring that claims be asserted in a timely manner so that memories remain reasonably fresh about the events in question." (Def.'s Mem. at 7.)  While faded memories may certainly be of

concern in the abstract, Defendant makes no claim of faded memories in the instant case.  (*See* Def.'s Mem.)  Furthermore, that Defendant "[thought] the claim was over" is simply an unpersuasive argument.[3]  (Def.'s Mem. at 7.)

Moreover, exercising the Court's discretion to extend the deadline is in the interest of justice.  On October 27, 2023, Plaintiff filed his complaint, which included a proposed summons. (*See* Compl; Proposed Summons.)  However, the Clerk of Court failed to issue the summons. (Order, Aug. 26, 2024.)  This administrative error was not harmless.  The issuance of a summons is required to properly effectuate service upon a defendant.  Fed. R. Civ. P. 4(b) ("If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons . . . must be issued for each defendant to be served.").  Defendant argues that the Plaintiff is a licensed attorney and aware of the Federal Rules of Civil Procedure and, therefore, "could have easily contacted the Clerk's Office to procure a summons."  (Def.'s Mem. at 6.)  Perhaps.  However, this Court will not hold Plaintiff responsible for curing errors made by the Clerk's office.  A cure of an error made by the Court should be made by the Court. Here, the only cure is an extension of the deadline.  *See e.g.*, *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (holding that the interests of justice were best served by allowing Plaintiff's late service where the U.S. Marshals Service failed to effect timely service); *Ruddock v. Reno*, 104 F. App'x 204, 206 (2d Cir. 2004) (summary order) (finding good cause where plaintiff relied on court-directed service and delays were not the plaintiff's fault).

---

[3] Defendant's "good cause" argument is also unavailing.  (Def.'s Mem. at 5-7.)  "As indicated by the plain language of Rule 4(m), notice to the plaintiff must be given prior to a *sua sponte* dismissal."  *Thompson v. Maldonado*, 309 F.3d 107, 110 (2d Cir. 2002).  Here, the Court's August 26, 2024 Order directed Plaintiff to serve Defendant by November 20, 2024, and informed Plaintiff that failure to do so would result in recommendation for dismissal of the case.  (Order, Aug. 26, 2024.)  This constituted Plaintiff's notice to serve Defendant.  A showing of "good cause" as to why the Court should not dismiss the case would have been required only if Plaintiff failed to serve Defendant by the ordered November 20, 2024 date. *Id.* (explaining that in absence of the court notifying the plaintiff of an impending dismissal, the plaintiff was "precluded from attempting to show good cause for his failure to serve process within the [90]-day period . . . . ").

Given all of these relevant considerations, the Court finds that Plaintiff's tort and deceptive practices claims are not time barred. The action was timely filed and served within the time ordered by the Court, pursuant to the Court's discretionary authority under Rule 4(m). Accordingly, Defendant's motion to dismiss Claims One (negligence), Two (strict product liability), and Four (deceptive business practices) is denied.

## II.      Plaintiff's breach of contract claim is barred by the statute of frauds.

Defendant argues that Plaintiff cannot raise a breach of contract claim or promissory estoppel claim because they are barred by the statute of frauds. (Def.'s Mem. at 9.) The Court agrees.

N.Y. General Obligations Law § 5-701(a) "provides that an agreement not in writing is void if it '[i]s a special promise to answer for the debt, default or miscarriage of another person.'" *MUTHLA ALSAYER, Plaintiff-Appellee-Cross-Appellant, v. OMNIX LABS, INC., Defendant-Appellant-Cross-Appellee.*, No. 25-331, 2026 WL 682344, at *2 (2d Cir. Mar. 11, 2026) (alteration in original). Here, Plaintiff alleges that Amazon, through its agent agreed that "Amazon was going to cover Plaintiff's medical expenses and damages" resulting from the use of the Counterfeit Product. (Compl. ¶ 33.) In other words, Plaintiff claims that Amazon agreed to answer for the debt of another, namely Plaintiff. However, fatally, Plaintiff fails to allege that this promise was memorialized in a writing. (*See* Compl.) Rather, Plaintiff's only allegations on this point are that Defendant's agent "told" and "promised" Plaintiff that Amazon would cover Plaintiff's medical expenses and damages resulting from the Counterfeit Product. (Compl. ¶¶ 21, 33.) Plainly, these allegations are insufficient to satisfy the statute of frauds. As such, any purported agreement is void as a matter of law. Plaintiff's claim for breach of contract must be dismissed. The same holds true of Plaintiff's promissory estoppel claim. That is, in New York,

a Plaintiff may not avoid the application the statute of frauds by invoking promissory estoppel. *Zimmerman v. Zimmerman*, 447 N.Y.S.2d 675, 679 (1982).

In an effort to avoid this conclusion, Plaintiff asks this Court to apply an exception to the statue of frauds doctrine. (*See* Pl.'s Mem. L. Opp'n Mot. Dismiss ("Pl.'s Mem.") at 5-7, ECF No. 15.) It is true that New York "[c]ase law has established that an oral promise to guarantee the debt of another may be enforced, notwithstanding General Obligations Law § 5–701(a)(2), if the plaintiff 'prove[s the promise] is supported by new consideration moving to the promisor and beneficial to him and that the promisor has become in the intention of the parties a principal debtor primarily liable[.]'" *Reddy v. Mihos*, 160 A.D.3d 510, 515 (2018) (citing *Martin Roofing, Inc. v. Goldstein*, 60 N.Y.2d 262, 265 (1983), *cert denied*, *Martin Roofing, Inc. v. Goldstein*, 466 U.S. 905 (1984)). Plaintiff makes no such allegations. In his opposition, Plaintiff presses that both his breach of contract and promissory estoppel claim can be maintained because Defendant's promise to pay him was supported indeed supported by new consideration—his "actual forbearance in not filing his lawsuit while the claim was pending for payment." (Pl.'s Mem. at 7.) Not according to the Complaint. That is, the Complaint is devoid of any allegation that Plaintiff and Amazon agreed that in exchange for the payment of Plaintiff medical bills, Plaintiff would forego a lawsuit against Amazon. (*See* Compl.) Indeed, the Complaint does not even allege that a potential lawsuit by Plaintiff against Amazon was ever discussed. Moreover, as Defendant aptly notes, even if Plaintiff had, at some point, negotiated with Amazon to forego a lawsuit, the Court struggles to construe that consideration as "new." What consideration then would have supported the original promise?

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is DENIED in part and GRANTED in part.  Defendant's motion to dismiss Claim One (Negligence), Claim Two (Strict Product Liability), and Claim Four (Deceptive Business Practices) is DENIED.  Defendant's motion to dismiss Claim Three (Breach of Contract, Promissory Estoppel) is GRANTED.


                                        SO ORDERED.

Dated: Brooklyn, New York              /s/ LDH
       March 31, 2026                  LASHANN DEARCY HALL
                                       United States District Judge

10